JOHN D. GLADE, APPELLEE, v. CHARLES C. WHITE, APPELLANT.

FILED MARCH 20, 1894.   No. 5599.

1. **Partnership:** EVIDENCE: REVIEW. In an agreement for the settlement of partnership matters, the stipulation that one of the partners individually assumed and agreed to pay all the outstanding debts and liabilities of the firm presented a question of fact whether or not taxes on property used by said firm, though not owned by it, constituted part of its firm liabilities, and a finding in the affirmative of such proposition, not being without support of evidence, will not be set aside as unsupported by sufficient proof.

2. ———: ———: ———. The finding of the trial court adversely to an arbitrament having been entered into between partners

for the settlement of differences between them will not be disturbed when there were such proofs as would justify the conclusion reached as one which might reasonably be attained upon due consideration thereof.

APPEAL from the district court of Saline county. Heard below before HASTINGS, J.

*F. I. Foss*, for appellant.

*J. W. Dawes* and *J. R. Webster*, contra.

RYAN, C.

On the 22d day of December, 1888, C. C. White made to John D. Glade his promissory note for the sum of $10,-000, with eight per centum interest, due on or.before January 1, 1891. To secure payment of the note Mr. White and his wife executed to Glade a mortgage on certain real property situated in Saline county, Nebraska. On the 14th day of February, 1891, the whole of said note not being paid, proceedings for the foreclosure of the aforesaid mortgage were begun in the district court of the aforesaid county. The defendant C. C. White answered, admitting the alleged execution of the aforesaid note and mortgage, but averring payment thereof by having and keeping on deposit in the State Bank at Crete (the bank where by its terms said note was payable) money sufficient to pay the balance due on the note aforesaid, which money the plaintiff had ever refused to accept in payment thereof. The defendant further answered that on December 22, 1888, defendant had bought of plaintiff certain real property in Saline county, which property was in plaintiff's two warranty deeds to defendant duly described. The defendant alleged that the real property described in each of said deeds was by plaintiff warranted free and clear of incumbrance, but, as defendant alleged, these warranties were broken by the existence of incumbrances warranted

against by reason of taxes to the amount of $530.36 having been assessed and existing as a lien on said real property at the date of the aforesaid conveyances.    The defendant alleged in his answer that he had tendered to plaintiff tax receipts evidencing the payment by defendant of the taxes aforesaid to the amount of $530.36, together with the entire balance due on said note after credit given for the taxes paid as aforesaid.    The plaintiff in his reply denied the alleged tender, and further alleged that while it was true that the defendant had purchased of plaintiff the property described in the deeds referred to in defendant's answer, that at and long prior to December 22, 1888, plaintiff and said defendant C. C. White were copartners doing business in owning and operating flour mills, and had owned and operated them as part of the real estate covered by said conveyances long prior to July 8, 1887, as copartnership property, and long before said taxes in defendant's answer mentioned were assessed or levied for the year 1888, and on said 22d day of December, 1888, and as a part of the same transaction with the conveyance of plaintiff's partnership interest in the property conveyed by the aforesaid warranty deeds, plaintiff and said defendant dissolved their copartnership; that as part of the said dissolution a written agreement was entered into between plaintiff and defendant by which the defendant, designated as the "party of the second part," contracted as follows: "The party of the second part assumes and agrees to pay all outstanding debts and liabilities of the said copartnership," and in the language of said reply, "and a charge and a lien on said copartnership property, and were, by the terms of said copartnership, assumed and agreed to be paid by the said defendant Charles C. White, and were not and are not a proper set-off or charge against this plaintiff or of the indebtedness due him."    It is not very clear just what facts it was intended should be stated by the above language.    Probably, however, it was the intention to plead

that the tax lien set up by defendant by way of set-off, as
having been paid, should not be treated as such set-off, be-
cause in paying the taxes defendant had done no more
than by the language above quoted from the agreement he
had assumed to do.   This intention of the pleader is fur-
ther evidenced by the following language of the reply :
"And the said note and mortgage here in suit were given
to the plaintiff by the defendant Charles C. White, as part
of the consideration to be paid by said defendant Charles C.
White to this plaintiff, for his interest in said copartner-
ship property, said deeds and the printed covenants there-
of were expressly limited by the written clauses of the
deeds to the interest of the plaintiff grantor."   In the re-
ply were these further averments :  "And the plaintiff
shows and avers that the above contract against incum-
brances was not intended to apply to, and cannot have a
legal effect to apply to, any incumbrance that had been as-
sumed by said copartnership or had accrued against said
property as a copartnership liability, but must be held to
apply to and to covenant against such incumbrance as had
accrued against said property by the act of this plaintiff, or
as may have existed against the said property prior to its
becoming the property of the copartnership, and not as-
sumed by said copartnership."

The description of the property and the history of its
title are rather confusing, for which reason they have been
ignored until the claims of the parties litigant, as stated in
the pleadings, should have been stated as clearly as possi-
ble without further details.   The appellant states the his-
tory of the title of the property conveyed (using designa-
tions "A" and "B," which we shall adopt as descriptive of
the property) in the following language:  "There are two
flouring mills on the Big Blue river, one on the north and
one on the south side of Crete.   The south mill is desig-
nated as mill 'A,' the north one as mill 'B.'   The south
mill, 'A,' was owned by one Bridges and one Johnston,

each having an individual one-half interest therein. John-
ston sold his half to defendant White. Bridges sold his
half to John D. Glade, plaintiff, and under the agreement
herein plaintiff Glade in January, 1889, sold his half in-
terest to the defendant herein. The north mill was owned
by one Seeley, who sold a half interest in the same to the
plaintiff and the defendant herein as the firm of White &
Glade, and one-half interest to George H. Glade. George
H. Glade subsequently sold one-half of his interest, to-wit,
one-quarter interest in mill 'B,' to his father, the plaintiff
herein, and also sold to the defendant White the other
quarter interest in said mill 'B,' and John D. Glade, un-
der the agreement herein, sold to defendant White his in-
dividual quarter interest in mill 'B' and also his interest
in said mill as a member of the firm of White & Glade.
These several transfers concentrated the title to the entire
property in defendant White."

The two deeds referred to in the answer were of date De-
cember 22, 1888, the status of the title being at that time
as indicated by the quotation made from appellant's brief.
Each of these deeds was made by John D. Glade and wife
to Charles C. White, and described the property conveyed
as the undivided half interest in the following property,
followed in one deed by the description for which "A"
stands as represented by appellant's brief, and in the other
deed by the description which "B" represents therein. It
will be observed that the copartnership firm of White &
Glade, as such, at the date of said two deeds had title to
only an undivided one-half of the mill property designated
as "B." In his individual name, therefore, the plaintiff
held title to one-half of one-half of the mill property last
referred to, while he owned in his individual name one-
half of the property referred to as "A" in appellant's
brief. The covenants in the deed made by Mr. Glade of
date December 22, 1888, were printed and were of the
usual form of warranty employed in conveyances described

as "warranty deeds." These warranties could only be held to apply to such interest as by the limitations of his conveyance the grantor assumed to own and convey. The appellant in his brief says payment of taxes on all the property in which Glade had conveyed his interest to White was made by White, except that White, discovering that the taxes for 1888 had not been paid by Glade on his several interests, was obliged to and did pay the same, and sought to retain the same from the last payment on the note as to which foreclosure proceedings were instituted in this case. In first examining the facts of this case and the arguments in respect thereto, it seemed to the writer that the question presented was simply as to the effect of the covenants of warranty and Mr. Glade's liability thereon. To the assertion of these payments of $520.36 as a set-off by reason of a breach of the covenants of warranty contained in the deed of Mr. Glade there is one insuperable objection, and that is that there was introduced in evidence no record or copy thereof showing a levy of taxes in Saline county for the year 1888 or any other year, neither was there introduced the original assessment roll, or a copy thereof, showing how the property was assessed. It is true there were introduced two schedules which apparently are copies of the treasurer's book upon which usually taxes are paid and so marked, but this book is neither a copy of the record of the levy of taxes, nor of their assessment. The parties presented their evidence in the trial court not as though the question was whether or not the defendant was liable upon his covenants of warranty, but whether or not the copartnership should have paid the taxes for the year 1888 as a liability of the firm. The firm of White & Glade used the property in 1885, 1886, and 1887 without payment of rent, and during those years the taxes were paid by the check of the aforesaid firm apparently without any special arrangement, but as a matter of course. All the taxes for the year 1888 seem,

from the tax receipts given in evidence, and the oral testimony, to have been assessed to White & Glade as against the property used by them. Under these circumstances the trial court found that these taxes for the year 1888 were among the liabilities of the firm of White & Glade, and that, therefore, by paying them the defendant did not create in his own favor a right of set-off as against the amount evidenced by the note, which, with the mortgage securing it, formed the basis of this action. As the evidence above referred to was sufficient to justify the court in arriving at the conclusion which was reached, that the taxes for 1888 were firm liabilities within the purview of the agreement of the parties, such conclusion will not be disturbed as being without support of evidence. There was evidence offered with a view of showing that these matters in dispute had been settled by an arbitration between the parties. The alleged submission to arbitrament was not in writing, and was denied by the plaintiff and one, at least, of his witnesses. A finding that there was an arbitrament would be contradictory of the essentials necessary to sustain the judgment of the trial court. In view of the contradictory nature of the evidence upon which the judgment of the court was based, we could not set aside its decree as unsupported by the evidence. Indeed, as an original question, we should reach the same conclusion upon the evidence as was reached by the trial court. The judgment of the district court is

AFFIRMED.

POST, J., not sitting.